436 So.2d 248 (1983)
Isaiah Eugene JOHNSON, Appellant,
v.
STATE of Florida, Appellee.
No. 82-755.
District Court of Appeal of Florida, Fifth District.
July 14, 1983.
Rehearing Denied August 17, 1983.
James B. Gibson, Public Defender, and Michael S. Becker, Asst. Public Defender, Daytona Beach, for appellant.
Jim Smith, Atty. Gen., Tallahassee, and Shawn L. Briese, Asst. Atty. Gen., Daytona Beach, for appellee.
PER CURIAM.
AFFIRMED.
DAUKSCH and SHARP, JJ., concur.
COWART, J., concurs specially with opinion.
COWART, Judge, concurring specially:
With pistol in hand, appellant circled a vehicle, containing two passengers in the rear seat area, while trying to get a clear shot at an intended victim, Ricky Joiner, who was trying to keep the vehicle between appellant and himself. Bullets aimed by appellant at his victim hit the top of the vehicle trunk, the bottom of the vehicle trunk and a panel near the rear window. One bullet was also fired through the open window on the driver's side and passed through the vehicle and broke the window at the front passenger's side. Appellant was charged, tried and convicted of an aggravated assault on Ricky Joiner and also a violation of section 790.19, Florida Statutes (1981), which makes it a felony crime to wantonly or maliciously shoot any firearm at, within or in any vehicle which is being used or occupied by any person.
Citing Golden v. State, 120 So.2d 651 (Fla. 1st DCA 1960), appellant claims the trial judge erred in denying his motion for a judgment of acquittal made during trial because the evidence was clear that he was shooting at his victim and only incidentally shot at and into the vehicle. The relevant facts in Golden were that Golden and one Pearce Jernigan had a bitter and heated argument while Jernigan was standing in the yard of his home. After Golden shot two deputies, Jernigan ran into his house with Golden in hot pursuit. Golden fired his pistol at Jernigan several times both before and after entering the house. Bullets struck both the exterior and interior of the house and one bullet struck Jernigan during his flight for safety. Golden was charged, tried and convicted of assault with intent to kill and a violation of section 790.19, Florida Statutes (1957 amended Ch. 59-458 Laws of Florida 1958). The appellate court affirmed the assault charge but reversed the conviction of wantonly or maliciously shooting at or into Jernigan's house.[1]
The basis for appellant's motion at trial and argument on appeal is the following language from Golden:

*249 The gravamen of the offense is the wanton or malicious shooting at or into a house. Although the evidence contained in the record clearly reveals that appellant was maliciously and wantonly shooting his pistol during the controversy, his malicious and wanton attitude was directed only toward [the victim]. There is no evidence which either directly or by inference could be said to establish the fact that appellant was wantonly or maliciously shooting at or into the house per se. ... We are forced to conclude that the statute was never intended to apply to the factual situation presented by the evidence in this case. (emphasis added) 120 So.2d at 653.
Before the trial court and on appeal appellant argues that Golden establishes a "per se test" that requires a specific intent to shoot at or into the object on account of (per) the object itself (se) and that the malicious and wanton intention be directed specifically or only toward the object, and that Golden holds that the statute is not violated where the shooting at or into the object is merely incidental to an intention of firing at a specific intended human target. This is the way Golden is commonly read and understood.[2] There is absolutely no question but that in this case the defendant's violence and fury were directed only at Ricky Joiner and not at the vehicle.[3]
"Wantonly" means an act done intentionally and with design; with reckless disregard for the rights of others; without excuse and heedless of consequences; an act done under circumstances evincing a lawless, destructive spirit. "Maliciously" describes an act done with a condition of mind that shows a heart regardless of social duty and bent on mischief; evidencing a design to do an intentional wrongful act toward another, or toward the public, without any legal justification or excuse and with the knowledge that injury or damage will, or may likely be caused to another person or to the property of another person. In fact, "malice" in its common acceptation, means ill will towards some person. The disjunctive adverbs, "wantonly or maliciously," refer to that mental condition which would naturally and in common experience be expected to be the attitude of one who, with reckless disregard of the potential deadly consequences, intentionally and for no good and lawful purpose discharges a firearm at, within or into an object known to contain, or to often contain, human beings, as distinguished from the lack of intent of one who *250 accidently discharges a firearm or the mind and attitude of one who, without intending any wrong or harm, innocently shoots a firearm under apparently safe conditions. Inanimate objects, such as houses and cars, seldom so offend a person as to become the subject of a malicious and wanton attitude and of a wrath such as would cause one to shoot the object per se. Such rare occurrences could hardly have been what the statute was intended to proscribe. Yet that is what Golden holds. Here, as in Golden, the shooter's malice as well as his bullets, were directed toward a specific victim and the object in question, the house in Golden and the vehicle here, was shot only because Jernigan, Golden's intended victim, sought refuge in the house in Golden and Ricky Joiner, appellant's intended victim, sought protection behind the vehicle in this case.
During the trial of cases charging a violation of this statute the Golden case is constantly argued to trial courts on motions for judgments of acquittal. The trial judge in this case declined to follow Golden and denied the motion for a judgment of acquittal; however, normally, when trial judges follow Golden and grant such motions the State cannot appeal and question the statutory construction of Golden. This case presents the question of the proper construction of this statute to this court for the first time and the material facts in this case are legally indistinguishable from those in Golden and this court without opinion sustains a ruling that directly conflicts with that in Golden. The statute either does, or does not, require the shooter's wicked or mischievous mental attitude or motive, as well as his bullets, be directed toward the object described in the statute. Golden clearly states and holds it does. I concur in sustaining the trial court's ruling because I think the Golden construction of the statute is erroneous. The words "wantonly or maliciously" relate to a mental element and describe the condition or attitude of mind which must accompany the prohibited act but the statute does not require that the defendant's malevolent attitude be that of a specific intent and that intent be in the form of a specific intention to harm the object involved.
The trial bench and bar need, and are entitled, to know whether or not this court agrees with the rationale and holding in Golden. This is exactly the type of case in which this court should (1) meet its duty to render a reasoned opinion properly construing the statute, (2) in the spirit of Article V, section 3(b)(3), Constitution of the State of Florida, forthrightly state a disagreement with the statutory construction and holding in Golden, and (3) expressly acknowledge that this court's holding in this case directly conflicts with Golden so as to permit a reconciling review by the supreme court under Florida Rule of Appellate Procedure 9.030(a)(2)(A)(iv).
NOTES
[1] It is interesting to note the special concurring opinion in Golden emphasized that Golden's firing of the pistol into the dwelling was "clearly part and parcel" of his attempt to shoot Jernigan which resulted in the conviction of assault with intent to kill and felt that the charge in the second count was "swallowed up by the conviction on the first count involving the higher crime." Although not identified as such this was an argument that under the then extant "single transaction rule" it made no difference whether the charge of maliciously shooting at or into the dwelling was upheld or not because the defendant could be sentenced only for the higher crime of all crimes committed during a single criminal transaction. For further explanation see Baker v. State, 425 So.2d 36 at 50.
[2] The Latin word "se" is a reflexive pronoun usually referring to the person or thing (house) which is the subject of the clause containing the word "se." When the reference is to an object (house) the form is "itself." The Latin word "per" is a preposition in the accusative case used to show the relation of a noun or pronoun (the object of the preposition) to some other word. In the sentence in question the word "per" shows the relationship of the noun "house" to its reflexive pronoun "itself." In this sense "per" means "because of" or "on account of." Therefore, in Golden the phrase "the house per se" means the house by itself; the house taken alone; the house in isolation; the house unconnected with other matters; the house in and of itself; or the house because of, or on account of, the house itself. See Black's Law Dictionary 1028 (5th ed. 1979).
[3] All facts in the case are well consistent with the following testimony of the defendant:

Q Then Ricky goes and gets behind his car?
A He went on the side.
Q And then you shot three bullets into the rear end of the car?
A Yes, I had to shoot at the car, I shot the car. Evidently if there were three bullets on the car I am quite sure I did it. But everyone of them was going for him, no occupants, I was strictly after Ricky Joiner.
Q You didn't care whether you hit that car or not, did you?
A I was shooting at him but it wasn't the car that I was concerned with because the car wasn't Ricky Joiner. The car could not hurt me because it was parked.
Q But you could hurt the car, couldn't you?
A I wasn't thinking in terms of hurting the car, I was basically after Ricky Joiner. [R 117-118].