469 So.2d 775 (1984)
Harry CARTER, Appellant,
v.
STATE of Florida, Appellee.
No. AU-45.
District Court of Appeal of Florida, First District.
December 6, 1984.
On Rehearing April 25, 1985.
Rehearing Denied June 18, 1985.
*776 Michael E. Allen, Public Defender, and Glenna Joyce Reeves, Asst. Public Defender, for appellant.
Jim Smith, Atty. Gen., and Gregory G. Costas, Asst. Atty. Gen., for appellee.
Before ERVIN, C.J., and MILLS, BOOTH, SMITH, SHIVERS, WENTWORTH, JOANOS, THOMPSON, WIGGINTON, NIMMONS, ZEHMER and BARFIELD, JJ.
On Rehearing En Banc April 25, 1985.
BOOTH, Judge.
Appellant stands convicted of throwing deadly missiles, contrary to Section 790.19, Florida Statutes, which provides:
Whoever, wantonly or maliciously, shoots at, within, or into, or throws any missile or hurls or projects a stone or other hard substance which would produce death or great bodily harm, at, within, or in any public or private building, occupied or unoccupied .. . shall be guilty of a felony of the second degree....
Defendant appeals the conviction on the grounds that the State failed to prove what was thrown, that it could produce death or great bodily harm, or that it was thrown at the building.
The record before us shows that an object was thrown which was of sufficient weight to shatter the reinforced glass pane in the metal door of the guard control room in Dormitory D. There was further testimony from the guard who was the intended target of the projectile that the object appeared to be a metal lock and that, after the incident, several metal locks were found on the floor of the control room. We hold the trial court properly denied motion for judgment of acquittal.
The statute requires that the object thrown be capable of causing death or great bodily harm. The exact object need not be identified or produced if there is other evidence from which its nature can be deduced. In Mas v. State, 222 So.2d 250 (Fla. 3d DCA 1969), the object thrown was alleged to have been a type of fire bomb,[1] but the State was unable to prove the exact nature of the object since it exploded or *777 burned when it was thrown. In affirming the conviction, the court held (222 So.2d 251-52):
The information contained the essential allegation that the missile thrown was one which would produce death or great bodily harm, and the additional language [of the information] of "to-wit: a fire bomb" was surplusage and did not require proof that the missile had the particular ingredients of a fire bomb... . [W]hen, as here, the missile is thrown and explodes or burns, there would be no way to prove the exact nature and quantity of its ingredients. For the purpose of the crime charged in this case, it was the nature and capability of the missile as disclosed by its explosive or fire-producing effect, rather than its exact ingredients which were material. (emphasis added)
In Wilton v. State, 455 So.2d 1142 (Fla. 2d DCA 1984), the object, a grapefruit, was innocuous enough but was thrown under circumstances which rendered it capable of causing death or great bodily harm, and the court held:
The significant point on this appeal is whether the throwing of a grapefruit at a passing tanker truck, thereby shattering its windshield and superficially cutting the driver, constitutes the crime of throwing a deadly missile into an occupied vehicle.
... .
In J.W.B. v. State, 419 So.2d 407 (Fla. 2d DCA 1982), this court held that the mere throwing of an orange at a school bus without proof of either striking the bus or any person was insufficient to constitute a crime. Yet, we pointed out that under the proper circumstances, an orange could be a missile under section 790.19. Here, a jury could properly conclude that throwing a grapefruit with sufficient force to break the windshield of a moving truck was an act which "would produce death or great bodily harm."
Under Section 790.19, Florida Statutes, it is the nature and capability of the missile, as disclosed by the evidence, to produce death or great bodily harm that is controlling. In the instant case, the nature and capability of the missile is sufficiently established by the testimony and disclosed by its effect on the door of the guard control room. The jury was entitled to find that, whether the object thrown was a metal lock or some other object, it was a sufficiently hard substance to cause great bodily harm and, had the officer not ducked behind the door, probably would have done so.[2]
Appellant also contends the trial court erred in refusing to give a jury instruction based on the holding in Golden v. State, 120 So.2d 651 (Fla. 1st DCA 1960), a case which seems to require that, for a conviction under Section 790.19, the party throwing the object must have intended to hit the building rather than an individual. If that is in fact the holding of the Golden case, it is a case from which this Court now recedes for the reasons stated in Ballard v. State, 447 So.2d 1040 (Fla. 2d DCA 1984), and Skinner v. State, 450 So.2d 595 (Fla. 5th DCA 1984). In Skinner, the court disagreed with Golden v. State, supra, and expressly held that:
Section 790.19, Florida Statutes (1983), is violated by a person who intentionally shoots at, within, or into a building for the primary purpose, or with the specific intent, of shooting at a person in or near the building, as well as by a person who *778 shoots at, within, or into the building per se.
In Ballard v. State, supra, the court held (447 So.2d at 1041):
In denying the motion to dismiss, the trial court disagreed with Golden v. State, 120 So.2d 651 (Fla. 1st DCA 1960). We agree with the trial court that on a motion to dismiss the element of wantonly shooting at or into a building is not negated by the pleaded facts that defendant fired at a man who was in front of the building. "Wantonly" does not require that the building be the target.
We hold that Section 790.19 should not, and need not, be interpreted to reverse a conviction under that statute because of evidence that defendant aimed a missile at, and intended to hit, the guard. This view is supported by Polite v. State, 454 So.2d 769, 771 (Fla. 1st DCA 1984), wherein this Court receded from Golden v. State, supra, in a case involving a conviction under the same statute, Section 790.19, for the offense of throwing a missile at an occupied vehicle, holding:
In the circumstances of the present case appellant's convictions for both battery and throwing a missile at an occupied vehicle could therefore be predicated on the single act of hurling a brick which struck an individual within the vehicle. The mental elements which the offenses require are not in all instances mutually exclusive, and furthermore in the present case the evidence is such as to permit a conclusion that appellant intended his single act to effect damage and injury to both the vehicle and the individual therein. To the extent that Golden, supra, may suggest a result contrary to that reached in this case, we hereby recede therefrom and adopt the rationale expressed in Johnson [v. State, 436 So.2d 248 (Fla. 5th DCA 1983)].
In the instant case, we need not consider what other crimes could have been charged or convictions obtained for the act of throwing a missile capable of causing death or great bodily harm. The evidence sufficiently supports the jury's determination that defendant violated the statute under which he was charged and stands convicted.
The other issue on appeal, the failure to grant a continuance, we find to be without merit.
Accordingly, the judgment of conviction below is affirmed.
WENTWORTH, J., concurs,
ERVIN, C.J., concurs in part and dissents in part.
ERVIN, Chief Judge, concurring in part and dissenting in part.
Although I am of the view that the majority's disposition of the first point raised reflects the better reasoned and more logical approach, I feel bound to follow this court's opinion in Golden v. State, 120 So.2d 651 (Fla. 1st DCA 1960), until that holding has either been reversed by the supreme court or receded from pursuant to the en banc procedure delineated in Florida Appellate Rule of Procedure 9.331. In the present case the only evidence of appellant's intent came from intended victim, prison guard Bennett, to the effect that the appellant threw an object at him, that he ducked, and the object hit the window of the control room, breaking it. In Golden v. State, the defendant shot at the victim inside the victim's house, resulting in the discharge striking the house. In reversing Golden's conviction for shooting into a dwelling, contrary to Section 790.19, Florida Statutes, this court stated:
The statute now under consideration make [sic] it a criminal offense for anyone to maliciously or wantonly shoot at or into any dwelling or other house. The intent of the statute is obvious. It was enacted for the purpose of preserving the life and safety of anyone occupying a dwelling or other house, and to punish anyone who maliciously or wantonly shoots at or into such an occupied dwelling or house. The gravamen of the offense is the wanton or malicious shooting at or into a house. Although the evidence contained in the record *779 clearly reveals that appellant was maliciously and wantonly shooting his pistol during the controversy, his malicious and wanton attitude was directed only toward Jernigan. There is no evidence which either directly or by inference could be said to establish the fact that appellant was wantonly or maliciously shooting at or into the house per se.

* * * * * *
We are forced to conclude that the statute was never intended to apply to the factual situation presented by the evidence in this case. The trial court therefore erred in denying defendant's motion for directed verdict as to count two of the information. The judgment of conviction and sentence as to count two is reversed and the cause remanded with directions that a judgment on said count be entered in favor of defendant.
Id. at 653 (e.s.).
Thus, the only evidence in Golden relating to the shooting into a structure revealed that it was directed toward the victim. Similarly, the only evidence of Carter's purpose for throwing a missile or other hard substance into the structure shows that the object was directed at the prison guard.
Neither do I feel bound by the majority's reliance upon Polite v. State, 454 So.2d 769, 771 (Fla. 1st DCA 1984), which purports to recede from Golden to the extent that Golden suggests a result contrary to that reached in Polite. The facts in Polite are obviously distinguishable from those in the present case. No facts were recited showing that the defendant intended that the missile thrown at the occupied vehicle be directed to a person within it. If, however, it was the intention of the three-judge panel in Polite to recede from Golden's holding that the statutory elements for the two offenses charged are mutually exclusive, and that both statutes may not be violated by a single act, I additionally feel no obligation to follow the Polite rule until the issues addressed in Polite, Golden and the present case are determined by the full court en banc. "The new appellate structural scheme requires the district courts of appeal to resolve conflict within their respective districts through the en banc process." Committee note to Florida Appellate Rule Procedure 9.331.
If Golden remains the law in this district, then I believe that appellant's requested instruction, based upon Golden, should have been given. "It is axiomatic that a defendant is entitled to a jury instruction on the theory of his defense." Palmes v. State, 397 So.2d 648, 652 (Fla. 1981). This rule ordinarily applies, regardless of how weak or improbable such defense may be. Koontz v. State, 204 So.2d 224, 227 (Fla. 2d DCA 1967); Holley v. State, 423 So.2d 562, 564 (Fla. 1st DCA 1982).
In my judgment the most important issue on appeal is the asserted error of the trial court in failing to grant a continuance, which the majority summarily disposes of with the statement that it finds the point to be without merit. The case on review was originally set for trial on June 21, 1983. Until a week prior to trial, assistant public defender Weiss had been assigned by his office the responsibility of handling Carter's case. On June 20, 1983, Judge Peach instructed acting Circuit Judge Douglas to conduct that same day voir dire examination of the jurors in Carter's case for the purpose of "judicial efficiency and economy." The assistant public defender in court at the time, Weiss, strenuously objected, stating that he had no longer been assigned by his office to try the case; that it was scheduled for trial the following day; that he was not then prepared and did not have the office file with him. He also advised that he had taken some 39 depositions relating to charges filed after the prison riots occurred and had spoken to Carter only on May 29, 1983, for the limited object of plea bargaining. He requested that voir dire be conducted the next day, the date the case had originally been set for trial, by the assistant public defender designated to handle the case. Judge Douglas, noting his belief that in the interests of justice it would be better to conduct *780 voir dire the following day, nevertheless stated that he felt bound to follow Judge Peach's instructions, and declined the request. Weiss renewed his objection and then conducted voir dire. The jurors were told that neither Weiss nor the state attorney present would actually try the case. During voir dire, Weiss erroneously told the jurors that they would only hear two witnesses: Carter and a guard, Officer Bennett.[1]
On the following day, Carter's attorney, Lorraine O'Connor, objected to the voir dire conducted the day before and moved to exclude the panel, which motion was denied. Both attorneys then briefly questioned the jurors and they were sworn.
There can be little question that due process requires a defendant be given the benefit of counsel, and that such right is denied when a defendant is forced to trial "with such expedition as to deprive him of the effective aid and assistance of counsel." Harley v. State, 407 So.2d 382, 384 (Fla. 1st DCA 1981). Thus, denial of a defense motion for continuance was held an abuse of discretion where, seven days prior to trial, the state had filed numerous additional charges against defendant, Harley, 407 So.2d at 384, and also where an assistant public defender was forced to go to trial on the day he was assigned a case, with no chance to prepare. Kimbrough v. State, 352 So.2d 925, 927 (Fla. 1st DCA 1977). See also Shepherd v. State, 108 So.2d 494 (Fla. 1st DCA 1959); Brooks v. State, 176 So.2d 116 (Fla. 1st DCA 1965). "The common thread running through each of these cases is that defense counsel must be afforded an adequate opportunity to investigate and prepare any applicable defenses. This right is inherent in the right to counsel." Brown v. State, 426 So.2d 76, 80 (Fla. 1st DCA 1983).
There is also no question that trial begins when selection of the jury to try the case occurs, and that the defendant is then entitled to effective representation at that critical stage. State v. Melendez, 244 So.2d 137, 139 (Fla. 1971). In my judgment the above facts demonstrate that the denial of the motion to continue the voir dire examination constitutes a palpable abuse of discretion requiring reversal, and that defendant was thereby denied effective representation during the critical stage of jury selection.

ON REHEARING EN BANC
BOOTH, Judge.
The Court has voted to consider this cause en banc on a recommendation of the panel because of the decision of the panel, released December 11, 1984, receding from this Court's prior opinion in Golden v. State, 120 So.2d 651 (Fla. 1st DCA 1960). The parties were notified, furnished a copy of the panel decision, and have filed supplemental briefs. After consideration by the entire Court, the panel opinion on the interpretation of Section 790.19, Florida Statutes, and the receding from Golden v. State, supra, is adopted by the Court en banc.
The Court en banc also reviewed the issue of the trial court's failure to grant a continuance. The facts regarding that issue are outlined by the dissenting opinion of Chief Judge Ervin, heretofore published following the panel decision. With due deference to the view expressed therein, however, the majority of the Court en banc is of the view that the trial court's denial of a continuance was not a clear abuse of discretion and did not constitute reversible error.
The record shows that the defendant was at all times represented by an attorney from the Public Defender's office. Assistant Public Defender Glenn H. Weiss acted *781 as attorney for appellant initially and up to a few days before jury selection.[1] At the time Mr. Weiss sought a continuance, on June 20, 1983, prior to commencement of the jury selection process in the case, he stated to the court that he had taken the depositions in appellant's case and had spoken with appellant on May 29 for the purpose of reviewing the depositions and to see whether he wanted to enter a plea bargain. Nonetheless, despite the involvement of Weiss with the case, he stated to the court that he felt "wholly unprepared to effectively pick a jury in this case;" that he had been told by the Assistant State Attorney that the case was set for Tuesday, June 21;[2] and that another Public Defender was scheduled to try the case on that day.
In reviewing the trial court's failure to grant a continuance in this case, the question is not whether the trial court should more properly have allowed the continuance, but whether abuse of discretion and reversible error are demonstrated on the record here. Appellant contends that it was a palpable abuse of discretion to deny a motion for continuance where that denial infringes upon a defendant's right to effective assistance of counsel. The claim of ineffective assistance of counsel, governed by the opinion of the Florida Supreme Court in Knight v. State, 394 So.2d 997 (Fla. 1981), was raised by objection in the trial court and is properly considered on direct appeal. See, e.g., Kimbrough v. State, 352 So.2d 925 (Fla. 1st DCA 1977).
Our review of the record fails to reveal any abuse of discretion on the part of the trial court or prejudice resulting to appellant as a result of the failure to grant a continuance. First, we notice counsel's familiarity with the case and, despite his disclaimer of preparedness, the extent of his involvement with this case belies to some extent the representations made in that regard. Further, on the following day, prior to the jurors being sworn, the trial court allowed defense counsel O'Connor opportunity to examine the jurors.[3]
Finally, we do not construe the trial court's comments[4] at the time continuance *782 was denied, stating the court's recognition of the chief judge's direction and the interest of judicial efficiency and economy, as improper or as removing the motion for continuance from its usual realm of judicial discretion.
Defendant was represented by counsel through the entire jury selection proceeding and remainder of the trial. There is no serious claim of prejudice here and none shown. Defendant does not claim that any improper juror was seated who would not have been had counsel O'Connor, rather than counsel Weiss, made the selection a day later and that the panel as selected did not fairly try his case.[5] Nothing meeting the standards required in Knight v. State, supra, for ineffective assistance of counsel is demonstrated.
Accordingly, the judgment below is affirmed.
MILLS, WENTWORTH, JOANOS, THOMPSON, WIGGINTON, NIMMONS and BARFIELD, JJ., concur.
ERVIN, C.J., concurs and dissents with written opinion, in which SMITH, SHIVERS and ZEHMER, JJ., concur.
SMITH, J., concurs and dissents with written opinion, in which SHIVERS, J., concurs.
ZEHMER, J., concurs and dissents with written opinion, in which ERVIN, C.J., and SMITH and SHIVERS, JJ., concur.
ERVIN, Chief Judge, concurring and dissenting.
I concur in that portion of the majority's opinion receding from Golden v. State, 120 So.2d 651 (Fla. 1st DCA 1960). I dissent, however, to that portion of the opinion which affirms the lower court's order denying the motion for continuance. I will not repeat all that I said previously in my dissent to the majority's original opinion, filed December 11, 1984. I will, however, add some facts that I feel should be stated, in view of the majority's opinion on rehearing en banc, which implies that Mr. Weiss's representation to the court that he believed he was not adequately prepared to pick a jury, was belied by the record showing Weiss's earlier activity on behalf of appellant. This record activity includes: (1) His demand for discovery, filed April 15, 1983; (2) his motion to dismiss count one of the information, filed June 6, 1983; and (3) his discovery disclosure, filed June 13, 1983, listing the names of three alibi witnesses. The record, however, does not refute Mr. Weiss's representation that he spoke only once with appellant, on May 29, 1983, for the purpose of reviewing depositions that he had previously taken, and of determining whether appellant wished to enter into plea negotiations. Mr. Weiss's record involvement in appellant's case should be considered in the broad context of his involvement with other defendants charged with the same offense. It appears that appellant was one of 39 defendants accused of participating in a prison riot that took place on January 23, 1983. We do not know the number of defendants that Mr. Weiss was designated to represent, but there is nothing in the record  and it would be highly unlikely to surmise  that the appellant's defense would be common to all defendants.
Mr. Weiss stated that although he had taken depositions in appellant's case, that case was only one among the many cases in which depositions were taken, and the time involved for such purpose spanned five or six days. His additional representation that he had no individual recollection of the *783 facts in Carter's case, "as opposed to any of the 38 I took in a simultaneous continuous fashion", is supported by his statement to the jury, during voir dire examination, that the jurors would hear only two witnesses, appellant and prison guard Bennett, when in fact at trial three inmates were called to testify as alibi witnesses on behalf of appellant. Indeed, although Weiss generally inquired of the jurors on matters relating to whether they knew any of the attorneys involved, whether they were friends or relatives of law enforcement officers, whether they had been victims of crimes, whether they might be biased against defendant because he was an inmate, and whether they would follow the court's instructions regarding the presumption of innocence, no inquiries were directed to the jurors regarding the specifics of the defenses which were actually tried before the jury: alibi, and any bias or motive by the state's only witness to fabricate his testimony.
I do not consider that the Knight v. State standards (Knight v. State, 394 So.2d 997 (Fla. 1981)), which are applicable to judging the effectiveness of counsel in a collateral attack proceeding, are altogether relevant to a case in which a direct review is sought of a trial court's exercise of discretion in denying a motion for continuance. See Kimbrough v. State, 352 So.2d 925, 927 (Fla. 1st DCA 1977), recognizing that "[a]ny appeal seeking a reversal of a conviction on the ground of denial of a continuance necessarily attacks the discretion exercised by the trial court since only a palpable abuse of discretion justifies reversal." There we held the trial court erred in refusing to continue a case that it had set for trial the same day in which it had vacated a defendant's former plea of guilty. The facts there disclose that when the case was called for trial, the assistant public defender who was then in court requested a continuance on the ground that he had no knowledge of the case, had just received the file, and felt that he could not adequately represent the defendant. In finding the existence of a palpable abuse of discretion, we concluded that appellant's case should not have been entrusted to "the care of another attorney who knows nothing of the case." Id. at 928.
I think the only real question before us is whether, under the circumstances, the error involved on appeal can be considered harmless. As stated earlier, the jurors were not sworn on the day Mr. Weiss conducted the voir dire examination. They were sworn the following day, after Lorraine O'Connor, the assistant public defender assigned to handle the case, appeared, and was permitted to ask a few questions of the jurors. I am well aware of the rule that a defendant is afforded the opportunity to challenge an individual prospective juror before that juror is sworn, or, for good cause, may challenge the juror after he is sworn, but before the evidence is presented. Fla.R.Crim.P. 3.310. It should be observed, however, that the court did not, on the day following Weiss's voir dire, afford the attorneys the opportunity to reopen the voir dire examination, but restricted them to only a few inquiries. In response to the prosecutor's request that before swearing the jurors, the court should first ask the jurors whether any of them had contacted the witnesses, or talked to anyone about the case, the court replied as follows:
I'm going to do that, but I'm glad you brought that up because I'm also going to give both of you an opportunity to do that as well if you want to. I'll just say, "Does the State wish to inquire?" "Does the Defense wish to inquire?" You may or may not. I'll be very simple with mine, asking that, since then, have they had any discussion with anyone or heard anything about the case, or have they done, you know, since they were selected. And then you both may want to ask them a few things, too. That will give you an opportunity also to talk with them if you wish to. And I'll explain to them that the same office is still representing the State and the Defense.
(e.s.) Ms. O'Connor must have interpreted the court's comments as allowing only a *784 restricted inquiry. Her questions were limited to the following matters:
I don't know whether or not you were asked whether you know any of the witnesses in this case, so I'll read out a few names, and if you know anyone, please tell me. One is J.R. Bennett, he's a correctional officer. The others are Gary Hayden, Larry Fields, and Egbert Green. Do any of you know any of these people? Do any of you know any of the members of Harry Carter's family, his mother, Thea Duke, or his father, Leroy Carter?
Okay. I have no other questions, then, thank you.
Although Ms. O'Connor, unlike Mr. Weiss, identified certain additional witnesses who were called at trial to testify on behalf of appellant, no inquiries were directed to the substance of their testimony, alibi, or whether the jurors would be less inclined to accept the testimony of inmate witnesses as to such defense, as opposed to that of the prison guard.
I remain of the view that the record neither impeaches Mr. Weiss's representation that he was unprepared to conduct voir dire examination, nor does it disclose the existence of only harmless error due to Ms. O'Connor's later opportunity to examine the jurors before they were sworn.
SMITH, Judge, concurring and dissenting.
I concur in the opinion of the majority, except as to denial of continuance. Therefore, I dissent as to the continuance issue and would reverse for new trial.
ZEHMER, Judge, concurring in part and dissenting in part.
I agree to recede from Golden v. State, 120 So.2d 651 (Fla. 1st DCA 1960), but I would reverse for failure to grant the continuance. I concur with Judge Ervin's opinion.
As I understand the facts, this was one of a number of criminal cases that arose out of a prison riot, and Mr. Weiss of the public defender's office had assisted in that office's investigation of a large number of those pending cases. This case was set to be tried on Tuesday, June 21, and Ms. O'Connor of the public defender's office was assigned to try the case for appellant. Judge Peach, however, instructed Judge Douglas to select the jury on Monday, June 20. Mr. Weiss being present, he was directed to select the jury for appellant. Judge Douglas denied Mr. Weiss's motion for continuance to the next day to permit Ms. O'Connor to select the jury, even though Weiss objected on grounds that he was not prepared to select a jury because another lawyer would be trying the case and had the file. Judge Douglas commented that even though he thought it might be better to wait until Tuesday for jury selection, he was following Judge Peach's order.
Selection of the jury is an essential phase of a criminal trial. The defendant must be present and able to assist counsel in this selection. The defendant is guaranteed effective assistance of counsel at this phase by the Sixth Amendment. Competent, effective jury selection cannot be performed by a lawyer not familiar with defense issues and strategy. This is especially so if he is no prepared to participate in the trial. Objecting to being compelled to select a jury for appellant's trial, Mr. Weiss made the following statements to the court:
[T]his case was scheduled for tomorrow, Tuesday, the 21st of June. I am not the attorney who has been assigned to try this case in the public defender's office. The attorney assigned to try this case from the public defender's office is one Lorraine O'Connor. And she, in fact, will be here tomorrow to try this case. This morning in preliminary discussions, the  Circuit Judge Peach suggested that we ought to pick a jury in Mr. Carter's case this morning, and then recess and reconvene tomorrow morning to try the case for various judicial reasons.
I have not prepared for this case since it is not mine. I have not discussed the case, in the framework of trial preparation, with Mr. Carter. I do not have the *785 office file. I do not have a copy of the interview with Mr. Carter. I have no materials whatsoever.
All of the materials our office has in Mr. Carter's files and so forth are at the Lake City branch in control of Lorraine O'Connor. I haven't even spoken with Mr. Carter since this case was assigned to Lorraine O'Connor.
I have taken deposition in Mr. Carter's case. And I have spoken once with Mr. Carter, which would have been May 29th at the Cross City Correctional Institute. The purpose of that discussion was to review the depositions with Mr. Carter and to see whether he wanted to enter a plea bargain or not.
We did no trial preparatory work at that time. And I feel wholly unprepared to effectively pick a jury in this case. I don't know the nuances of this case. Incidentally, when I mentioned a minute ago that I took depositions in this case, I might add this case was one of five or six days straight of depositions. I took 39 codefendants in the Cross City riot of January 23rd, 1983, and I have no individual remembrance of the facts in Mr. Carter's case as opposed to any of the 38 I took in a simultaneous continuance fashion.
I can honestly say I didn't even know what Mr. Carter was charged with until I looked at the state attorney's copy of the information. I knew he was charged in Count I with attempting to cause a riot, I should say. But I didn't know what building he is charged with throwing projectiles at in Count 2, until I just looked at the information.
I'm wholly unprepared to pick a jury in this case. And what to be gained  what the Court can accomplish by picking a jury today and trying the case tomorrow is far outweighed by the prejudicial effect of having an unprepared attorney pick the jury.
And I might add that I spoke with Mr. John Terhune of the state attorney's office last Thursday. Mr. Terhune gave me the court calendar and told me that the Harry Carter case would be tried on Tuesday. Not today but Tuesday. And therefore, I relied upon that representation, which I found was changed only this morning. I haven't brought any materials. I haven't even brought any of the notes I customarily rely on in voir dire examination.
So, I strongly object to proceeding with voir dire in this case today instead of tomorrow for those reasons.
Nothing in this record supports a conclusion that Mr. Weiss was not being truthful with the court. The majority opinion does not find that Mr. Weiss was lying. (Had it done so, the matter should have been promptly referred to The Florida Bar for disciplinary proceedings.) Yet the majority opinion gives no credence to Mr. Weiss's statements and simply concludes that his prior connection with the case sufficiently prepared him to perform this essential function. Absent competent evidence that he was lying, his statements as an officer of the court should have been accepted by the trial court and by this court. That being so, he was not prepared to select the jury and it was an abuse of discretion to deny the continuance.
Moreover, the trial judge did not exercise his discretion in denying the request for continuance, as evidenced by his comments in denying the motion:
The Court, having heard the argument of both counsel, and this Court sitting on assignment at the request of Chief Circuit Judge Peach, and the Chief Judge having instructed the attorneys and this Judge on assignment that this jury would be picked this morning over objection, the Court will honor the ruling of the Chief Circuit Judge, although, personally feeling that, in the best interest of justice, to remove all doubt, would be to pick the jury on the same day. But following the ruling and the announced ruling of the Chief Circuit Judge that in the interest of judicial efficiency and economy, this Court will adopt the ruling of Judge Peach, and the jury selection will be held today.
*786 The trial judge merely followed orders, rather than acting on his own evaluation of the situation. This constituted an abuse of discretion, not the exercise of it.
Finally, this error should not be treated as harmless. In addition to the reasons cited by Judge Ervin, it appears that Mr. Weiss was forced to conduct voir dire of the jury panel without benefit of the file in the case, without any notes, and with no independent recollection of the facts or issues in this particular case. As a result, Mr. Weiss made several mistakes during voir dire that might well have misled the jurors and affected their ultimate decision. In any event, compelling Mr. Weiss to proceed in this case was not unlike requiring a lawyer who just happened to be in the courtroom to assist the defendant in jury selection or having the court itself conduct voir dire of the jurors. Neither procedure is acceptable.
Effective assistance of counsel during jury selection is so important to insuring a fair trial that any demonstrated deprivation should be treated as fundamental error, absent extraordinary compelling circumstances. Since a substantial deprivation of this constitutional right has been shown, we should not indulge assumptions or rationalizations to conclude that the defendant was not prejudiced. Neither should we require that the defendant, as a predicate for relief, demonstrate that a different jury composition would have occurred. Imposition of this latter burden all but forecloses effective relief to a defendant so deprived. We should not, in our haste to reach finality of decisions, so lightly dispense with this fundamental constitutional right.
I would reverse and remand for a new trial.
NOTES
[1] In Mas v. State, 222 So.2d 250 (Fla. 3d DCA 1969), the opinion describes the charge as follows:

By an information the appellant was charged in a first count with throwing toward and upon an occupied vehicle "a certain missile which was capable of producing death or great bodily harm, to-wit: a fire bomb" in violation of Section 790.19, Florida Statutes, F.S.A. In a second count the appellant was charged with setting a fire and burning a designated vehicle of value exceeding $25 in violation of Section 806.03, Florida Statutes, F.S.A.
[2] The cases cited by the appellant on this point are not to the contrary. Preston v. State, 397 So.2d 712 (Fla. 5th DCA 1981), simply states the rule that there must be proof that the object thrown was capable of causing death or great bodily harm. D.B.C. v. State, 341 So.2d 230 (Fla. 1st DCA 1976), states that the evidence produced, from a sole witness who stood 250 to 300 yards away that defendant threw "`something' in the direction of the train but [witness] did not see what they were throwing" was insufficient. J.T.K. v. State, 341 So.2d 229 (Fla. 1st DCA 1976), holds that evidence from a witness standing 100 yards away that defendant threw rocks or ballasts at an unoccupied railroad boxcar with no damage to the boxcars was insufficient to prove felonious conduct.
[1] In fact, in addition to Carter, the defense the following day called three inmates as alibi witnesses.
[1] The record here shows the initial filing on behalf of defendant, a demand for discovery dated April 15, 1983, is signed by Assistant Public Defender Glenn H. Weiss. The State's response to demand for discovery expressly authorizes attorney Weiss to inspect, copy, test, and photograph matters herein disclosed, etc. Thereafter, attorney Weiss filed a motion to dismiss count I of the complaint, and a "discovery disclosure." Motions relating to these matters as well as the State's motions to amend information and response to demand for discovery, and the court's order on motion to dismiss were mailed to Weiss, as attorney for defendant. The last pleading of record signed by Weiss was the discovery disclosure filed June 13, 1983.
[2] Defendant's presence in the courtroom during the jury selection process is not at issue, and we note he is referred to as present in the record of the selection process.
[3] Voir dire examination of prospective jurors was conducted before the Honorable Vernon Douglas, County Court Judge, on Monday, June 20, 1983, by Assistant State Attorney Robert Moeller, and Assistant Public Defender Glenn Weiss. The following day, June 21, Judge John Peach presided, and both the State and the defendant were represented by different counsel, with John Terhune, Assistant State Attorney, and Lorraine O'Connor, Assistant Public Defender, appearing on behalf of the respective parties. In overruling the renewed objections by defense counsel O'Connor and request for exclusion of the jury panel, the trial court stated:

THE COURT: Mr. Weiss had interviewed and been the main attorney in this case up until last week. I think I talked to you, and you said you picked up the case on Thursday or something like that; you had it all the time, it had been in your office, but you became the one that was going to try the case when you knew for sure it was going to trial.
I'll overrule any objection to that, if you've moved it as an objection.
MS. O'CONNOR [defense counsel]: Okay... . The court then introduced the new counsel for the State and the defense to the jury and explained that the parties were still represented by the State Attorney's office and the Public Defender's office, respectively, and both counsel were given the opportunity to inquire of the jury, which they did prior to the jury being sworn.
[4] Chief Circuit Judge John W. Peach directed that the jury be selected on Monday and that the court then reconvene the following day to try the case. The presiding judge, Judge Douglas, announced he would honor the ruling of the chief judge and, in the interest of judicial efficiency and economy, would deny the continuance, although he personally felt that "in the best interest of justice to remove all doubt would be [sic] to pick the jury on the same day."
[5] The voir dire examination was expertly conducted on defendant's behalf by Assistant Public Defender Weiss and consumed in excess of 40 pages of the record, exclusive of his objections to opposing counsel's questions and/or colloquy with judge and opposing counsel. Additional examination of jurors was made by Assistant Public Defender O'Connor the following day prior to jury being sworn.