980 So.2d 1061 (2008)
STATE of Florida, Petitioner,
v.
Charles A. KETTELL, Sr., Respondent.
No. SC07-573.
Supreme Court of Florida.
April 24, 2008.
*1062 Bill McCollum, Attorney General, Tallahassee, Florida, and Robert J. Krauss, Assistant Attorney General, Bureau Chief, and Richard M. Fishkin, Assistant Attorney General, Tampa, FL, for Petitioner.
James Marion Moorman, Public Defender, and Alisa Smith and Bruce P. Taylor, Assistant Public Defenders, Tenth Judicial Circuit, Bartow, FL, for Respondent.
CANTERO, J.
In this case we decide whether the crime of wantonly or maliciously shooting into a building can be established solely by proof of the shooting itself. We review Kettell v. State, 950 So.2d 505 (Fla. 2d DCA 2007), where the trial court instructed the jury as much. The Second District Court of Appeal reversed, however, holding that the statute required more than mere proof of the shooting. That decision directly and expressly conflicts with Holtsclaw v. State, 542 So.2d 437 (Fla. 5th DCA 1989), in which the court held that merely shooting at, into, or within a building establishes the elements of the crime. We have jurisdiction to resolve the conflict. See art. V, § 3(b)(3), Fla. Const.; State v. Kettell, 959 So.2d 717 (Fla.2007) (granting review). Applying the elementary principle that performing an act "wantonly or maliciously" requires more than merely performing the act, we hold that proof of the shooting alone is insufficient to prove the crime. We therefore approve the Second District's decision.

I. FACTS AND PROCEDURAL HISTORY
When neighbors heard shots coming from Kettell's apartment, they called 911. Officers were dispatched and, upon arriving there, found Kettell alone. The apartment was filled with haze and smelled of gunpowder. The officers found a .38 caliber revolver, gun cleaning materials, and ammunition, as well as bullet holes and bullet fragments in the floor molding. Kettell later admitted to his ex-wife that he fired the shots. He was charged with violating section 790.19, Florida Statutes (2003), which provides, in pertinent part, that "[w]hoever, wantonly or maliciously, shoots at, within, or into . . . any public or private building . . . shall be guilty of a *1063 felony of the second degree."[1] The case went to trial, where a major issue was Kettell's intent.
At trial, a controversy erupted over the jury instructions on the elements of the crime. At the charge conference, arguing that Holtsclaw (the conflict case) held that intent was established solely by evidence that the defendant fired shots within his apartment, the State proposed special jury instructions. The court reserved ruling until after closing arguments. In closing, the State argued in part that Kettell's act of firing his weapon was wanton and malicious because of the risk of personal injury or property damage. Defense counsel argued that the State had not established wanton or malicious intent because it failed to prove the likelihood of personal injury or property damage or Kettell's knowledge of any such likelihood. After closing arguments, the State again requested its special jury instructions because the "jury need[ed] to be instructed that this is a per se crime." Defense counsel objected, arguing that the special instructions negated the statute's wanton or malicious intent requirement, instead creating per se liability for shooting into a building. Considering itself bound by Holtsclaw, the trial court granted the instruction.
The standard jury instruction for the crime requires proof of three elements: that the defendant (1) shot a firearm; (2) at, within, or into a building, occupied or not; and (3) did so "wantonly or maliciously." Fla. Std. Jury Instr. (Crim.) 10.13. These terms are defined in the instructions as follows:
"Wantonly" means consciously and intentionally, with reckless indifference to consequences and with the knowledge that damage is likely to be done to some person.
"Maliciously" means wrongfully, intentionally, without legal justification or excuse, and with the knowledge that injury or damage will or may be caused to another person or the property of another person.
Id. The trial judge gave these standard instructions, and then gave the State's requested special instructions, which read:
In other words, to sustain a conviction for wantonly or maliciously shooting at, within or into a building, the conduct must have been done with an intent to cause damage or injury. This intent element is fulfilled by a person who intentionally shoots at, within or into a building for the primary purpose or with a specific intent of shooting at a person in or near the building as well as by a person who shoots at, within or into a building per se.

Ownership of the building is no defense to the offense of maliciously or wantonly shooting at, within, or into a building.
(Emphasis added.) The jury found Kettell guilty. On appeal, however, the Second District reversed, finding that the first special instruction misstated the law. Kettell, 950 So.2d at 508.

*1064 II. DISCUSSION OF LAW
The issue here is whether one can "wantonly or maliciously" shoot at, into, or within a building by "shooting at, within or into a building per se." We hold that the answer must be "no." The adverbs "wantonly or maliciously" require more than the act of shooting itself. Below we (A) explain the nature of the conflict in the district court decisions, (B) resolve the conflict by first analyzing the genesis of the phrase "per se" in the cases interpreting the statute and then concluding that Holtsclaw misinterpreted these decisions to remove the statute's intent requirement, and finally (C) reject the State's contention that giving the erroneous special instruction was harmless error.

A. The Conflict in the Cases
In deciding to give the State's special instruction on intent, the trial court relied on the Fifth District Court of Appeal's decision in Holtsclaw, 542 So.2d 437. Accordingly, to define the conflict here, we first examine that case.
Holtsclaw involved similar, if more violent, facts. After a night of heavy drinking, the defendant returned to his trailer, where his wife and a baby had stayed. Id. at 438. When she asked about the blood on his chin, he struck her. He then retrieved a gun and several times threatened to shoot himself and her. He shot into the floor and then into the wall of the room where the baby was sleeping. When his wife rushed into the room to protect the child, he followed her and again fired into the wall. He was charged with violating section 790.19, as well as with aggravated assault and battery. The jury found him guilty on all counts, but the trial court granted a judgment notwithstanding the verdict on the charge of violating section 790.19. When Holtsclaw appealed his convictions for aggravated assault and battery, the State cross-appealed. Id. at 437-38.
The Fifth District reinstated Holtsclaw's conviction. In its brief opinion, the court addressed the issue as follows:
Holtsclaw's attorney argues this statute did not apply because Holtsclaw owned the trailer and either (1) the shots were made without an intent to injure anyone; or (2) the shots were not directed at anyone. None of these reasons constitute defenses to section 790.19, by its own language, nor does case law so construe it. As we said in Skinner v. State, 450 So.2d 595, 596 (Fla. 5th DCA 1984), review denied, 470 So.2d 702 (Fla.1985):
[We] hold that section 790.19 . . . is violated by a person who intentionally shoots at, within, or into a building for the primary purpose, or with the specific intent, of shooting at a person in or near the building, as well as by a person who shoots at, within, or into a building per se.

Holtsclaw, 542 So.2d at 438-39.
In this case, the State requested the special instruction, and the trial court granted it, based on the emphasized language from Holtsclaw above. The State argued that, based on that language, the wanton or malicious intent element is fulfilled by shooting at, within or into a building "per se." The Second District found that the special instruction was "not a correct statement of the law." Kettell, 950 So.2d at 507. The court noted that the instruction absolved the State from proving that the act was done wantonly or maliciously. Id. at 506-07. The district court then addressed the basis for the erroneous instruction  the opinion in Holtsclaw:
In giving the incorrect instruction, the trial court relied on language in Holtsclaw v. State, 542 So.2d 437, 438-39 *1065 (Fla. 5th DCA 1989). See also Skinner v. State, 450 So.2d 595, 596 (Fla. 5th DCA 1984). As we have explained, we cannot accept the view that the language at issue constitutes a correct and clear statement of the law. The Holtsclaw court undoubtedly sought to express the view that an offense under section 790.19 may be established without showing that the defendant shot at someone. In other words, a defendant who shoots into a building can do so wantonly or maliciously even though he does not shoot at someone. Unfortunately, the language employed in Holtsclaw suggests that the intent element is fulfilled simply by showing that someone shot into a building without proving that the shooting was done wantonly or maliciously.
Kettell, 950 So.2d at 507. Thus, disagreeing with Holtsclaw about the proof required to establish the intent element of section 790.19, the court held the instruction erroneous; and because the instruction concerned an element of the crime, it reversed and remanded for a new trial. Id. at 507-08.

B. Resolving the Conflict
The district court opinions essentially conflict over whether proof of the first two elements of section 790.19 (shooting a firearm at, within, or into a building) is sufficient to establish the third (doing so wantonly or maliciously). Understanding why Holtsclaw is incorrect first requires us to (1) review the history of the district courts' interpretations of section 790.19 and then (2) explain how Holtsclaw misinterpreted these decisions to remove the statute's intent requirement.

1. The Genesis of the Phrase "Per Se" in Interpretations of the Statute
The root of the conflict can be traced back almost fifty years, when courts, in describing the intent required under the statute, first began to use the phrase, "shooting at or into a building per se." A district court first used the phrase in Golden v. State, 120 So.2d 651 (Fla. 1st DCA 1960). In that case, the defendant, while shooting at the victim, chased him into the victim's home. One bullet struck the victim, but others lodged in various parts of the home. Concluding that the evidence showed that the defendant's "malicious and wanton attitude was directed only at [the victim]," not, as the statute required, "that appellant was wantonly or maliciously shooting at or into the house per se," the First District Court of Appeal reversed the conviction. Golden 120 So.2d at 653. Thus, the district court used the phrase "shooting at or into the house per se" to articulate the requirement that the object of the shooting must be the building itself. Proof that a defendant was shooting at a person was insufficient.
Over two decades later, a judge on one district court, and a panel of another, took issue with Golden. In Johnson v. State, 436 So.2d 248, 248 (Fla. 5th DCA 1983), the panel affirmed without opinion the defendant's conviction under section 790.19. In a specially concurring opinion, however, Judge Cowart provided the facts, which were similar to those in Golden. Johnson apparently circled a car while shooting at one of the passengers. Addressing the First District's opinion, Judge Cowart wrote:
The disjunctive adverbs, "wantonly or maliciously," refer to that mental condition which would naturally and in common experience be expected to be the attitude of one who, with reckless disregard of the potential deadly consequences, intentionally and for no good and lawful purpose discharges a firearm at, within or into an object known to *1066 contain, or to often contain, human beings, as distinguished from the lack of intent of one who accidently discharges a firearm or the mind and attitude of one who, without intending any wrong or harm, innocently shoots a firearm under apparently safe conditions. Inanimate objects, such as houses and cars, seldom so offend a person as to become the subject of a malicious and wanton attitude and of a wrath such as would cause one to shoot the object per se. Such rare occurrences could hardly have been what the statute was intended to proscribe.
Johnson, 436 So.2d at 249-50 (Cowart, J., concurring specially) (emphasis added).[2] Judge Cowart concluded that "the statute does not require that the defendant's malevolent attitude be that of a specific intent and that intent be in the form of a specific intention to harm the object involved." Id. at 250.
The next year, the Second District adopted the same position. Affirming the denial of a motion to dismiss, the district court held that "the element of wantonly shooting at or into a building is not negated by the pleaded facts that defendant fired at a man who was in front of the building." Ballard v. State, 447 So.2d 1040, 1041 (Fla. 2d DCA 1984). That is, "`[w]antonly' does not require that the building be the target." Id. Then, in Skinner v. State, 450 So.2d 595, 595-96 (Fla. 5th DCA 1984), the Fifth District, with Judge Cowart now writing for the majority, used the phrasing that the court in Holtsclaw later quoted. The court held that section 790.19 "is violated by a person who intentionally shoots at, within, or into a building for the primary purpose, or with the specific intent, of shooting at a person in or near the building, as well as by a person who shoots at, within, or into the building per se." Id. at 596. Thus, Judge Cowart used the phrase "shooting . . . into the building per se" not to hold that merely shooting into a building proves intent, but to emphasize that the target of the shooting need not be a person.
The Second and Fifth Districts thus decidedly rejected the First District's interpretation in Golden. These courts did not, however, hold that firing into a building is per se criminal. Rather, they held that the building itself need not be the target of the shooting. A defendant's contention that he had aimed at a person in or near a building is not a defense.
In response to these decisions, the First District receded from Golden. See Polite v. State, 454 So.2d 769, 771 (Fla. 1st DCA 1984) (receding from Golden and "adopt[ing] the rationale expressed in Johnson"); Carter v. State, 469 So.2d 775, 778 (Fla. 1st DCA 1984) (recognizing that Polite receded from Golden).

2. Holtsclaw Eliminated the Statute's Intent Requirement
As detailed above, the phrase "shooting into a building per se" arose in the context of whether the intent to shoot must be directed at the building itself. That was not the issue, however, in either this case or in Holtsclaw. Rather, the conflict here results from Holtsclaw's incorrect reliance on Skinner to address a much different defense: that the shooting was not wanton or malicious.
As already noted, the court in Holtsclaw quoted the "per se" language in Skinner to *1067 hold that the defendant's claims (lack of malicious or wanton intent) did not "constitute defenses to section 790.19, by its own language." 542 So.2d at 438. Thus, the court held that under the statute it is no defense that the act of shooting was not malicious or wanton. Such a holding effectively renders section 790.19 a per se crime.
The court's opinion in Holtsclaw misinterpreted the holding of Skinner. Skinner addressed the Golden defense (that intending to shoot a person instead of a building did not establish the requisite intent under the statute). Its use of the phrase, "shooting at or within a building per se" addressed only that defense. That was not Holtsclaw's defense, and it is not Kettell's.
The reasoning in Holtsclaw also disregards the plain language of the statute, which requires that the prohibited act be done "wantonly or maliciously." As noted above, the standard jury instruction for section 790.19 defines maliciously and wantonly as follows:
"Wantonly" means consciously and intentionally, with reckless indifference to consequences and with the knowledge that damage is likely to be done to some person.
"Maliciously" means wrongfully, intentionally, without legal justification or excuse, and with the knowledge that injury or damage will or may be caused to another person or the property of another person.
Fla. Std. Jury Instr. (Crim.) 10.13. Therefore, as to this element, the State must prove: (1) that the act was done intentionally and recklessly without regard for the consequences; and that the defendant knew either (2) "that damage is likely to be done to some person" (for acting "wantonly") or that injury or damage will or may be caused to another person or the property of another person (for acting "maliciously"). See Smith v. State, 679 So.2d 30, 31 (Fla. 4th DCA 1996) ("A conviction under section 790.19 requires that the perpetrator act `wantonly' or `maliciously' in throwing the projectile toward an occupied or unoccupied building. In other words, the evidence must show that the defendant threw the rock with reckless indifference to the consequences or with knowledge that damage to person or property was likely to occur."). Under the statute, proof that the defendant shot at or into a building is simply insufficient to prove that the act was wanton or malicious.
Because the mere shooting into a building does not establish intent under the statute, the two special instructions given the jury in this case were erroneous. The instructions provided that the wanton or malicious "intent element is fulfilled . . . by a person who shoots at, within or into a building per se" and that "[o]wnership of the building is no defense to the offense." (Emphasis added.) As the Second District noted, "the [first] instruction thus indicates that shooting at, within, or into a building is an act that `standing alone'  that is, without reference to the intent to cause damage or injuryis sufficient to satisfy the intent element of the offense" and held "[t]his is not a correct statement of the law." Kettell, 950 So.2d at 506-07. We agree. In fact, both of these special instructions are erroneous statements of the law. Proof that an accused fired a shot at, within, or into a building does not establish malicious or wanton intent. The State must prove this element in accordance with the definitions of those terms, including the defendant's knowledge that his act may injure someone or damage someone else's property.
In this case, Kettell argued that he lacked malicious or wanton intent: that the firing was not reckless; that the shots *1068 were directed away from people or into objects; that no one was injured and no injury was intended; that no one else's property was damaged; and that he had no knowledge that he was likely to injure anyone or damage anyone else's property. The special instructions removed that defense because they required the jury to find him guilty upon proof that he fired into a building.

C. The Error Was Harmful
Having concluded that the special instructions given at trial were erroneous statements of the law, we now turn to the State's contention that any error was harmless.[3] We disagree.
Noting that the trial court gave both the standard jury instruction applicable to section 790.19 as well as the erroneous special instructions, the Second District concluded that "in full context, the best that can be said of them is that they are contradictory and therefore confusing and misleading." Kettell, 950 So.2d at 507. Accordingly, the district court reversed and remanded for new trial because the trial court did not correctly instruct the jury on the elements of the crime charged. Id. The State argues that any error was harmless because the evidence supports the jury's finding of wanton or malicious intent.
We have previously held that due process requires "that a defendant be accorded the right to have a Court correctly and intelligently instruct the jury on the essential and material elements of the crime charged and required to be proven by competent evidence." Gerds v. State, 64 So.2d 915, 916 (Fla.1953). Jury instructions, however, are subject to the contemporaneous objection rule, and unpreserved claims of error cannot be raised on appeal absent fundamental error. Castor v. State, 365 So.2d 701, 703 (Fla.1978). In Kettell's case, the trial court gave the standard instruction on the elements of the crime, including the definitions of the hotly disputed element of wanton or malicious intent, without alteration. Over the defendant's objection, the court at the same time instructed the jury that wanton or malicious intent was established if the jury found only that the defendant fired a gun in his apartment. As we explained above, the judge thus erroneously instructed that shooting within a building is a per se crime. See Butler v. State, 493 So.2d 451, 452 (Fla.1986) ("[T]he court should not give instructions which are confusing, contradictory, or misleading.").
The court's error cannot be considered harmless. We have held that "[s]ince the jury is entitled to be instructed on the elements of the offense, it cannot be harmless error to fail to do so especially when the omission is brought to the attention of the trial court by the defendant." Scott v. State, 808 So.2d 166, 170-71 (Fla. 2002), superseded on other grounds by § 893.101, Fla. Stat. (2002), as recognized in Garcia v. State, 901 So.2d 788, 792 n. 1 (Fla.2005). Although the court in this case did not, as in Scott, fail to instruct the jury on an element of the crime, its use of the State's requested instruction resulted in an incorrect instruction on the law regarding a disputed element of the crime. The instruction impermissibly removed, or at least reduced, the State's burden to prove malicious or wanton intent beyond a reasonable doubt. The court's faulty instructions on the intent element were thus material to the jury's consideration of whether Kettell violated *1069 section 790.19. Therefore, the error was not harmless. See id.; see also Reed v. State, 837 So.2d 366, 369 (Fla.2002) (holding that an erroneous jury instruction was fundamental error because the instruction contained an incorrect definition of an element that reduced the State's burden of proof, was "material to what the jury had to consider to convict the petitioner," and was "a disputed element" at trial); Barton v. State, 941 So.2d 1291, 1291 (Fla. 4th DCA 2006) (reversing and holding that the trial court erred by instructing on justifiable force because, in the absence of a separate forcible felony, the instruction "impermissibly negate[d] the defendant's claim of self-defense"); Murray v. State, 937 So.2d 277, 282 (Fla. 4th DCA 2006) (holding that fundamental error occurred where the jury was given contradictory instructions, one correct and the other incorrect).

III. CONCLUSION
We hold that the wanton or malicious intent element of the crime defined by section 790.19, Florida Statutes, is not established solely by evidence that a defendant fired a shot at, within, or into a building. The State also must prove that the shooting was done wantonly or maliciously as those terms are defined in the standard jury instruction. We therefore approve the decision of the Second District in this case and disapprove the Fifth District's decision in Holtsclaw. We remand this case for further proceedings consistent with this opinion.
It is so ordered.
LEWIS, C.J., and WELLS, ANSTEAD, PARIENTE, QUINCE, and BELL, JJ., concur.
NOTES
[1] The entire statute provides as follows:

Whoever, wantonly or maliciously, shoots at, within, or into, or throws any missile or hurls or projects a stone or other hard substance which would produce death or great bodily harm, at, within, or in any public or private building, occupied or unoccupied, or public or private bus or any train, locomotive, railway car, caboose, cable railway car, street railway car, monorail car, or vehicle of any kind which is being used or occupied by any person, or any boat, vessel, ship, or barge lying in or plying the waters of this state, or aircraft flying through the airspace of this state shall be guilty of a felony of the second degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.
§ 790.19, Fla. Stat. (2003).
[2] In a footnote, Judge Cowart explicated the meaning of the phrase "per se" and the First District's use of it in Golden. Johnson, 436 So.2d at 249 n. 2 ("Therefore, in Golden the phrase `the house per se' means the house by itself; the house taken alone; the house in isolation; the house unconnected with other matters; the house in and of itself; or the house because of, or on account of, the house itself.").
[3] We reject without discussion the State's contention that it was necessary to give the erroneous instructions to Kettel's jury in order to punish defense counsel for alleged misconduct. No misconduct occurred; and even if it did, the sanction for misconduct cannot include the granting of an instruction that misstates an element of the crime.